[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 8, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15564
Non-Argument Calendar

_____

D. C. Docket No. 03-80075-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL KLOPF,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 8, 2008)**

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Michael Klopf, proceeding pro se, appeals his 30-month sentence for possession with intent to use five or more false identification documents ("I.D.s") unlawfully, in violation of 18 U.S.C. § 1028(a)(3), and his consecutive 120-month sentence for use of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2). Based on a review of the record and the parties' briefs, we discern no reversible error, and AFFIRM Klopf's sentences.

## I. BACKGROUND

Our prior opinion has detailed the relevant facts in this case. See U.S. v. Klopf, 423 F.3d 1228, 1232-35 (11th Cir. 2005). While Klopf's case was on direct appeal, the Supreme Court decided U.S. v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). In light of that decision, we vacated the district court's original sentencing order and remanded the case to allow the court to "reconsider the sentence as a complete sentencing package post-Booker." Klopf, 423 F.3d at 1246. The district court re-sentenced Klopf on 3 October 2006, and this appeal followed.

## II. DISCUSSION

Klopf argues that the district court should not have applied Booker to his case and that the district court erred by enhancing his offense level by 20-points.

2

## A. Application of Booker

Klopf contends that the remedial majority opinion in Booker, which held the sentencing guidelines advisory, is unconstitutional and deprives the district court of authority to impose extra-verdict enhancements. Klopf also claims that the Booker remedy is unconstitutional as retroactively applied to him because he relied upon Apprendi[1] when he "handpicked the laws he violated based on the punishment he faced if later arrested and convicted of the crimes." Appellant's Br. at 27.

We may not overrule Booker because it is binding Supreme Court precedent. Barbour v. Haley, 471 F.3d 1222, 1228 (11th Cir. 2006). Klopf notes that he is preserving the issue to argue to the Supreme Court, and he has preserved the issue. Klopf's argument that the district court did not have jurisdiction to impose extra-verdict enhancements also fails because we have held that district courts do have such authority. United States v. Chau, 426 F.3d 1318, 1322-24 (11th Cir. 2005) (per curiam).

The retroactive application of an unforeseeable judicial enlargement of a criminal statute violates the Due Process Clause because it is similar to an ex post facto law. Bouie v. City of Columbia, 378 U.S. 347, 353, 84 S. Ct. 1697, 1702 (1964); see United States v. Duncan, 400 F.3d 1297, 1306-07 (11th Cir. 2005).

---

[1]Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000).

However, we have held that the retroactive application of Booker is permissible because: (1) the U.S. Code specified the statutory maximum sentence; (2) our precedent recognized that the statutory maximum was the maximum specified in the U.S. Code; and (3) the Guidelines informed the defendant that the sentencing judge could engage in factfinding and could impose a sentence up to the statutory maximum. Duncan, 400 F.3d at 1307-08. The retroactive application of the Booker decision to Klopf does not act as an ex post facto law. Indeed, we were required to apply Booker "to all cases on direct review." Booker, 543 U.S. at 268, 125 S. Ct. at 769. We disagree with Klopf's claims that he was prejudiced by his reliance on Apprendi both when he decided to commit his crimes and when he decided to proceed to trial, because Apprendi explicitly stated that it did not address the Federal Sentencing Guidelines. Apprendi, 530 U.S. at 497 n.21, 120 S. Ct. at 2366 n.21; Duncan, 400 F.3d at 1308 ("[B]efore Blakely[2] was decided, every federal court of appeals had held that Apprendi did not apply to guideline calculations made within the statutory maximum.").

## B.    The District Court's Guidelines Calculations

We review the district court's factual findings for clear error, and its application of the Sentencing Guidelines de novo. United States v. Ndiaye, 434

---

[2]Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004).

4

F.3d 1270, 1280 (11th Cir. 2006). We will only recognize clear error if "we are left with a definite and firm conviction that a mistake has been committed." United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation omitted). "The Government has the burden of proving the applicability of guidelines that enhance a defendant's offense level. Similarly, when a defendant challenges a factual basis of his sentence, the government has the burden of establishing the disputed fact by a preponderance of the evidence." Ndiaye, 434 F.3d at 1300 (citation omitted). The district court may base the defendant's sentence on "evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing." U.S. v. Saunders, 318 F.3d 1257, 1271 n.22 (11th Cir. 2003) (citation omitted). Klopf believes that the district court erred by enhancing his sentence for: (1) the monetary loss of the offense; (2) the sophisticated means used in the offense; (3) the possession of five or more unlawfully produced means of identification; (4) obstruction of justice; and (5) his aggravating role in the offense.

### 1. Monetary Loss Enhancement

Klopf argues that the district court erred by increasing his offense level by 10 levels for the intended monetary loss of the offense. Under the applicable

5

guideline, a defendant's offense level is to be increased by 10 points if there was a loss of more than $120,000. U.S.S.G. § 2B1.1(b)(1)(F) (2003). In addition, when resolving disputed factors, the sentencing court may consider any information that "has sufficient indicia of reliability to support its probable accuracy." Id. at § 6A1.3. When dealing with an offense where the offense level is determined largely on the basis of the total amount of loss, relevant conduct includes, among other things, any acts and omissions that "were part of the same course of conduct or common scheme or plan as the offense of conviction." Id. at § 1B1.3(a)(2); see § 3D1.2(d). We have stated that we will evaluate the "similarity, regularity, and temporal proximity between the offense of conviction and the uncharged conduct" when determining whether the uncharged conduct is relevant conduct under § 1B1.3. United States v. Maxwell, 34 F.3d 1006, 1011 (11th Cir. 1994) (quotation omitted).

A significant amount of evidence at Klopf's original sentencing hearing indicated that he was responsible for over $160,000 in total loss. Therefore, the district court did not clearly err in finding that over $120,000 in loss resulted from the offenses.

**2. Use of Sophisticated Means Enhancement**

Klopf asserts that his offense level at sentencing should not have been

enhanced for the sophisticated means. Under the Guidelines, the defendant's offense level is to be increased by two levels if the offense involved sophisticated means. U.S.S.G. § 2B1.1(b)(8)(C). Sophisticated means involves "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Id., cmt. n.7(B). As an example, the Guidelines mention "[c]onduct such as hiding assets or transactions . . . through the use of fictitious entities [or] corporate shells . . . ordinarily indicates sophisticated means." Id.

The district court did not err by finding that Klopf used sophisticated means to commit the offense. There was evidence that Klopf (1) obtained supporting documents for the false I.D.s, including Social Security cards, voter registration cards, and utility bills; (2) had another individual create approximately 30 sets of false I.D.s; (3) obtained background reports and ran credit checks as a part of his identity theft offenses; and (4) had the fraudulent credit cards mailed to sham businesses and paid the minimum payments in order to keep the victims from discovering that any fraudulent credit cards had been issued. Therefore, the district court did not err in finding that Klopf used sophisticated means to commit his offense.

### 3. Possession of Five or More Unlawfully Produced Means of Identification Enhancement

Klopf urges that the enhancement for possession of five or more unlawfully produced means of identification constituted double counting because the facts underlying the enhancement were also the basis for the underlying conviction. We review allegations of impermissible double counting under the Guidelines de novo. United States v. Dudley, 463 F.3d 1221, 1226 (11th Cir. 2006). Under U.S.S.G. § 2B1.1(a), a defendant who is convicted of, among other things, violating 18 U.S.C. § 1028(a)(2) shall have a base offense level of 6 if the offense of conviction does not have a statutory maximum sentence of over 20 years. See U.S.S.G. App. A. Under U.S.S.G. § 2B1.1(b)(9)(C)(ii), a defendant's offense level is to be increased by 2 levels if the offense involved "the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification."

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Bracciale, 374 F.3d 998, 1009 (11th Cir. 2004) (quotation omitted). Furthermore, we have held that the Sentencing Commission may increase a defendant's offense level based on a specific offense characteristic

that is an element of the offense the defendant was convicted of committing. United States v. Naves, 252 F.3d 1166, 1168-69 (11th Cir. 2001) (affirming the application a two-level increase to the offense level based on the offense involving a carjacking to a defendant who was convicted of carjacking).

Because there is nothing in § 2B1.1(a) to indicate that the base offense level of six accounts for "the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification," it does not constitute double counting for the offense level to be increased on such grounds. See U.S.S.G. § 2B1.1(a) and (b)(9)(C)(ii); Naves, 252 F.3d at 1168-69. Accordingly, the district court did not err by applying the § 2B1.1(b)(9)(C)(ii) enhancement.

### 4. Obstruction of Justice Enhancement

Klopf asserts that the district court erred in enhancing his sentence 2 levels for obstruction of justice. Under the Guidelines,

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

U.S.S.G. § 3C1.1. One example of the type of conduct to which this enhancement applies is "destroying or concealing or directing or procuring another person to

9

destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . ." Id., cmt. n.4(d).

The district court did not clearly err in finding that Klopf attempted to have his parents and a family friend remove evidence from his apartment. Klopf's parents pled guilty to obstruction of justice and Klopf does not dispute that his mother attempted to enter the apartment through the window. Such a finding shows that the application of the guidelines enhancement for obstruction of justice was not error.

### 5. Aggravating Role Enhancement

Klopf maintains that he should not have received the aggravating-role enhancement because he was the sole defendant charged and convicted of these crimes and there were no other participants in the crimes. We review a district court's upward adjustment due to the defendant's status as a leader or organizer under U.S.S.G. § 3B1.1 for clear error. United States v. Phillips, 287 F.3d 1053, 1055 (11th Cir. 2002). Under the Guidelines, the defendant's offense level should be increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." § 3B1.1(a). "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." Id., cmt.

10

n.1.

The district court did not clearly err when it found that Klopf was an organizer or leader of a criminal activity involving five or more participants or was otherwise extensive because there was evidence showing that there were five other participants. Accordingly, the district court did not clearly err in applying the § 3B1.1(a) enhancement.

## III. CONCLUSION

Klopf appeals his 150 month total sentence by insisting that the district court should not have retroactively applied Booker to his case and that the district court erred by enhancing his offense level by 20-points. As we have explained, the district court did not err in applying Booker to Klopf, and it did not err in enhancing his sentence. Accordingly, we **AFFIRM**.